**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**WARREN D. WAMSLEY,**

       **Petitioner,**

  **v.**                       **CIVIL ACTION NO. 2:07-cv-41**
                                     **(Judge Maxwell)**

**DAVID BALLARD, WARDEN,
MOUNT OLIVE CORRECTIONAL CENTER**

       **Respondent.**


**REPORT AND RECOMMENDATION
28 U.S.C. § 2254**


On May 21, 2007, the *pro se* petitioner, Warren D. Wamsley, [hereinafter referred to as "petitioner"] filed a Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody.[1] On September 27, 2007, the respondent, David Ballard, [hereinafter referred to as "Respondent"], was ordered to respond to petitioner's § 2254 petition.[2] Respondent filed his Answer on December 18, 2007.[3] On December 18, 2007, Respondent also filed a Motion for Summary Judgment and Memorandum in support thereof.[4] On December 21, 2007, the Court sent

---

[1] Doc. No. 1

[2] Doc. No. 10

[3] Doc No. 16

[4] Doc. Nos. 17, 19. Attachments to Respondent's Motion for Summary Judgment are hereinafter referred to as "Respt' Ex. X."

petitioner a <u>Roseboro</u> Notice.[5]  On January 24, 2008, petitioner filed a Response to Respondent's Answer and Motion for Summary Judgment.[6]

This matter is pending before me for additional review and report and recommendation.

## I.  PROCEDURAL HISTORY

**A.      PROCEEDINGS IN STATE COURT**

**1.      The Webster County Conviction**

On May 8, 2001, a Webster County, West Virginia, Grand Jury indicted petitioner on eighty-three counts.  Counts 1, 3, 6, 7, and 12-81 charged petitioner with Sexual Assault in the First Degree, in violation of West Virginia Code section 61-8B-3.  Counts 2, 4, 8, and 11 charged petitioner with Incest, in violation of West Virginia Code section 61-8-12.  Count 5 charged petitioner with Sexual Abuse in the First Degree, in violation of West Virginia Code section 61-8B-7.  Counts 9, 82, and 83 charged petitioner with Sexual Assault in the Second Degree, in violation of West Virginia Code section 61-8B-4.  Count 10 charged petitioner with Sexual Abuse by a Parent, Guardian, or Custodian, in violation of West Virginia Code section 61-8D-5.  (Resp't Ex. 1).  On January 30, 2003, a jury convicted petitioner on all Counts <u>except</u> Counts 6, 10, and 81, which were dismissed at the close of the State's case.[7]  (Resp't Ex. 2).  By order entered April

---

[5] Doc. No. 45

[6] Doc. No. 53.  Attachments to Petitioner's Response are hereinafter referred to as "Pet. Response Ex. <u>X</u>."

[7] Count 6 was dismissed because the trial court found the State failed to sufficiently prove petitioner inserted his finger into the victim's vagina.  Count 10 was dismissed because the trial court found the State failed to sufficiently prove petitioner was acting as a parent, guardian, or custodian at the time of the alleged offense.  Count 81 was dismissed because the trial court found the State failed to sufficiently prove the victim was eleven years old or less at the time of the alleged offense.  (Resp't Ex. 13 at 415-421).

18, 2003, petitioner was sentenced on Counts 1 and 3 to fifteen to twenty-five years of imprisonment, to run consecutively. He was sentenced on the remaining Counts to multiple terms of fifteen to twenty-five years, five to fifteen years, and one to five years, all to run concurrently with his sentences on Counts 1 and 3. (Resp't Ex. 3).

By order entered October 28, 2003, the trial court set aside its sentencing order and resentenced petitioner in order to allow him to effectuate a timely appeal to the state supreme court.

### 2. Direct Appeal to the West Virginia Supreme Court of Appeals

On March 8, 2004, petitioner, by counsel, filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals [hereinafter referred to as WVSCA]. (Resp't Ex. 4). In the appeal, petitioner asserted the following trial errors.[8]

1. The evidence presented by the State of West Virginia is not of sufficient competence, credibility, or relevance to overcome the presumption of innocence afforded to the defendant, and that the jury chose to ignore the presumption of innocence and because of the nature of the crime, chose to convict the defendant based upon the whims of public policy, not based upon the evidence and law as instructed by the Court.

2. That the court should have dismissed the charges as having not been tried in accordance with the "three term rule" as requested by the defendant prior to the trial.

3. The court improperly denied the motion of the defendant to strike a venire member for cause. The juror repeatedly stated he would be unduly influenced by the other jurors and would not be able to hold his position even if he thought the defendant was innocent and thus the defendant was required to use a peremptory challenge and did not have an unbiased panel from which to strike. The state had joined in the motion to strike for cause.

---

[8] Except where indicated, petitioner's claims are worded exactly as he presented them.

4. That the jury verdict was influenced by improper 404(b) evidence as admitted by the Court, over the objection of counsel for the defense which evidence was not close in time to the crime committed.

5. The denial by the Court of the defendant's motion to dismiss the counts related to sexual assault based on the insertion of a finger as not being within the statutory definition of a crime of sexual assault.

6. The sentences imposed upon the petitioner by the trial court are disproportionate to the offenses charged and constitute cruel and unusual punishment.

By order entered May 13, 2004, the WVSCA refused petitioner's appeal. (Resp't Ex. 4).

**3.    Habeas Petition Filed in the Circuit Court of Webster County**

On May 27, 2004, petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus in the Circuit Court of Webster County. (Resp't Ex. 5). In his petition, petitioner alleged the following four grounds for relief:

1. Jurisdiction Due to Unconstitutional Sentencing. Statute is unconstitutional in sentence length. Petitioner was sentenced to two terms of 15 to 25 years. This is unconstitutional due to the fact the petitioner will discharge this sentence before he is eligible for parole.

2. Ineffective Assistance of Counsel. Counsel did not call witness in behalf of the petitioner, even though this petitioner wanted him to do so.

3. Ineffective Assistance of Counsel. Counsel did not motion for any forensic examinations of States complainants as to testify in this petitioner's behalf.

4. Ineffective Assistance of Counsel. Counsel did not discuss any strategies with petitioner and did not keep petitioner informed as to any plan of defense and or investigations and no copies of any motions and or statements for or against the petitioner. [Counsel] also filed petitioner's appeal to the W. Va. Supreme Court without petitioner's signature and or approval.

On June 4, 2004, petitioner, by counsel, filed an Amended Petition for a Writ of Habeas Corpus. (Resp't Ex. 6). Petitioner alleged the following twenty-two grounds for relief:

1. Was the Petitioner denied a trial by a fair, unbiased, impartial, objective Jury, qualified and free from exception or liability, a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III,

Fourteen of the West Virginia Constitution, when there had been an automobile accident involving two empaneled Jury members, who were car pooling to and from trial, and a complaining State Witness and her Family Member[s], this accident creating an input disqualification of the two Jury members for reasons of conflicting interest and liability to parties of the Case at hand.

2.    The Petitioner was convicted after a trial where the State failed to follow the provisions of Mandatory Joinder Rule 8.(2), of West Virginia State Court Rules of Criminal Procedures, the State having known of two or more offenses meeting the elements for Mandatory Joinder, failed to Join in a single prosecution all offenses known, Jeopardy attaching at the first trial on less than all offenses known, the second trial on other offenses that should have been joined in a single Prosecution was a violation of the Double Jeopardy Clauses of the United States and West Virginia Constitution.

3.    The Petitioner was convicted on an Indictment returned nearly twenty years after the first alleged offense [and] Thirteen years after the last alleged offence was to have occurred, this creating a Prima Facie Prejudice to the Defendant's ability to offer any reliable or effective defense to the more than decade/decades old allegations and leaving a trial with unreliable results, in Violation of West Virginia State Constitution, Article III, § 4, 10, and 14.

4.    The Petitioner's sentence is Unconstitutional, in that the Petitioner will never become parole eligible under the structure of the sentence imposed, being two consecutive sentences of (15) to (25) years in prison, making the effective sentence (30) to (50) years in prison, the Petitioner will discharge this sentence at (25) years, which is (5) years before he becomes eligible for Parole, This in violation of State and Federal sentencing guidelines and in Violation of a Liberty Interest as provided in West Virginia Constitution Article III § 10.

5.    The Petitioner's sentence under West Virginia State Code 61-8B-3 (1984) repealed, is Unconstitutional, in that the Petitioner will never become parole eligible under this statute, being that 61-8b-3, (1984) repealed, had a sentence of (15) to (25) years in prison, the Petitioner will discharge this sentence (2½) year before becoming eligible for Parole, this in Violation of State and Federal sentencing guide lines and in Violation of a Liberty Interest as provided in West Virginia Constitutional Article III § 10.

6.    The petitioner was convicted of numerous counts of the indictment in violation of Ex-Post-Facto principles when there was no attempt to revive. In violation of West Virginia Constitution Art. III, § 4.

7.    The Petitioner was tried and convicted under a repealed statute. In violation of West Virginia Constitution Art. III, § 4.

8.	The Petitioner was tried and convicted under present day rules of evidence for alleged crimes that were to have occurred over 15 or 20 years ago. In violation of West Virginia Constitution Art. III, § 4.

9.	The Petitioner was convicted after a trial where the state introduced 404(b) evidence against the Defendant. Rule 404(b) was not in existence at the time of the alleged offense and it's application worked to the detriment of the defendant. In violation of West Virginia Constitution Art. III § 4.

10.	The petitioner was sentenced to the current penalty under West Virginia State Code 61-8(b)-3, (1984). Statute 61-8(b)-3, enacted in (1976) had a penalty less than the penalty of Statute 61-8(b)-3 (1984). This in violation of West Virginia Constitution Art. III § 4.

11.	The Petitioner was convicted after a trial, where the Trial Court Judge committed pl[ain] error in giving an improper instruction to the Jury, in regards to West Virginia State Code § 61-8(b)-7, where the Indictment failed to instruct properly the essential elements of the offense and improperly instructed the law in place at the time of the alleged offenses, therefore violating West Virginia State Constitution Article III, § 4, 10, and 14, and the United States Constitution Article I, § 10.

12.	The Petitioner was convicted of allegedly violating West Virginia State Code § 61-8B-3, where the State charged in an indictment, twenty one violations between (1982) and July (1984), alleging "Sexual intrusion" in each and every count, the law in place at the time of the alleged offenses required "Sexual intercourse" (W. Va. Code § 61-8B-3, 1976), Sexual intrusion was not part of the Statute at the time of the alleged offenses, and did not become part of the Statute until July 1, (1984), this leaving a trial with unreliable results and in violation of the Ex-Post-Facto Clauses of both State and Federal Constitutions.

13.	The Petitioner was denied his Constitutional right to a Speedy Trial in Case No. 01-F-12, this being Indicted on May 23, 2000, as Case No. 00-F-23, and dismissed by Order of the Court entered on May 14, 2001, and re-indicted on May 8, 2001, as Case No. 01-F-12, trial was not held until April, 2002, with no chargeable request for continuance of any term by the Defendant appearing in the record, this leaving the Defendant tried late in the sixth term of Court after being indicted clearly more than three terms of Court had passed, baring the trial of Case No. 01-F-12, and leaving a Trial in Violation of this States Three Term Rule and in Violation of U.S. Const., amend. VI and W. Va. Const., art. III. § 14.

14.	The Petitioner was convicted of allegedly violating West Virginia State Code § 61-8-12, where the State charged in an indictment, three violations between (1982) and (1986), alleging "Sexual Intrusion" in each and every count, the law in place at the time of the alleged offenses required "Sexual Intercourse" (W. Va.

Code § 61-8-12 1923), Sexual intrusion was not part of the Statute at the time of the alleged offenses, and did not become part of the Statute until July 1, 1984, this leaving a trial with unreliable results and in violation of the Ex-Post-Facto Clauses of both State and Federal Constitutions.

15.     The Petitioner was convicted on Indictment 01-F-13, after a trial where the Court instructed the Jury, that in order to find the Defendant innocent of the Counts charged in the indictment, each member of the jury would have to have a reasonable doubt that the charges in the indictment were not true, this instruction shifting the burden of proof to the Defendant and requiring the jury to find him innocent beyond a reasonable doubt, this violation Both State and Federal Constitutions and make a trial with unreliable results.

16.     The Petitioner was convicted in Case No. 01-F-13, after a trial, where the Court failed to provide an in camera hearing in order to determine whether or not evidence offered under W.Va. Rules of Evidence, Rule 404(b), would be admissible at trial, the Court instead electing to adopt and make applicable in Case No. 01-F-13, a prior ruling from another Case that was tried about one year earlier, this violating Due process of law, Notice and Opportunity, Access to the Court, Effective Assistance of Counsel, Right to Confrontation, as provided in both State and Federal Constitutions, as well as violating the spirit of Supreme Court of W. V Va.'s, rulings in State v. Dolin, 347 S.E.2d 208 (W. Va. 1986).

17.     The Petitioner was convicted after a trial where the Prosecuting Attorney stated a personal opinion as to the justness of a cause, the credibility of witnesses, and innocence of the accused, further commented on the defendant as having a duty to call witnesses in support of his defense, this shifting the burden of proof to the Defendant and made comments that dehors the record, in violation of W. Va. Constitution Art. § III, 10 & 14.

18.     The Petitioner was convicted of a least three counts of allegedly violating West Virginia State Code § 61-8B-4, this code requires a proving of forcible compulsion, as one of it's material elements, this State failed to produce any evidence of forcible compulsion in regard to the counts the Petitioner was convicted, therefore failing to prove a material element of the alleged crime, this leaving a trial with unreliable results and in violation of the W.Va. Constitution.

19.     The Petitioner was sentenced in violation of the Ex-Post Facto Clause of both State and Federal Constitutions, in regard to each count of the Indictment alleging a Violation of the West Virginia State Code § 61-8-12, alleged to have been committed between the years of (1982) and (1989), the Statutory sentence in place under the law at the time was (5) to (10) years in the Penitentiary, the Petitioner being sentenced to a greater punishment of (5) to (15) years, Count (II) however, the Petitioner was sentenced (15) to (25) years, this sentence being greater than

even the penalty under the law of today (2005), therefore violating W. Va. Const. Art. III § IV and U.S. Const. Art. I., § 9; Art. I, § 10.

20. The Petitioner had ineffective assistance of counsel, pre-trial, during trial, post-trial, at sentencing and on appeal, this ineffective assistance of counsel constituting a fundamental unfairness, prejudice, and a trial with unreliable results and failing to meet Constitutional muster under both State and Federal Constitutions, U.S. Constitution Amendment VI, and West Virginia State Constitution Article III § 14.

21. The Petitioner was denied his Constitutional right to a speedy trial as provided by U.S. Constitution amendment VI, W. Va. Constitution III, § 14 and W. Va. Code 62-3-21, when the State failed to provide a trial within three regular terms of court after indictment.

22. The Petitioner was denied his Constitutional right to a Fair, Impartial, Qualified Jury, free from Exception, Bias, and prejudice, as provided by the Sixth and Fourteenth Amendments of the United States Constitution and West Virginia Constitution article III, § 14, when the Court failed to strike for cause, Jurors who revealed Bias Identifiers and Prejudicial Views or Experiences, or Inability to hold to there own Conviction and Opinions in reaching a verdict in a Jury environment, requiring the Defense to correct the Court's error by using the Petitioners peremptory challenges to remove jurors who should have been struck for cause, therefore reducing the jury panel to less than twenty as required to meet Constitutional muster.

The state habeas court held an omnibus evidentiary hearing on December 2, 2005, at which the petitioner testified. No further witnesses were called. (Resp't Ex. 9.)

By Order entered June 1, 2006, the state habeas court granted in part, and denied in part, petitioner's petition. (Resp't Ex. 8.) The court granted relief on Ground 10 (sentence not consistent with statutory penalty at the time of the commission of the offense), Ground 12 (sexual intrusion not an element of First Degree Sexual Assault at the time petitioner committed the offense), Ground 14 (sexual intrusion not an element of Incest at the time petitioner committed the offense), and 19 (proper sentence for Incest at time of offense was five to ten years, not five to fifteen). As part of its relief, it dismissed Counts 1, 2, 3, 4, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30 as violating ex post facto principles. The court denied relief

on the balance of petitioner's grounds. (Resp't Ex. 8 at 22). The court then sentenced petitioner to fifteen to twenty-five years on Counts 5-11, 31-63, and 65-81, and five to fifteen years on Counts 82 and 83. (Resp't Ex. 8 at 26-27). The court further ordered that all sentences run concurrently. (Id.)

On June 28, 2006, petitioner, by counsel, filed a "Motion for Supplemental Pleadings" under West Virginia Rules of Civil Procedure 15(d) and 60(b). (Resp't Ex. 9). In his Motion, petitioner claimed the state habeas court's order contained multiple errors, as follows: first, the habeas court imposed sentence on Counts 6, 10, and 81 of the indictment, which were dismissed. (Resp't Ex. 9 at 2-3); second, the state habeas court sentenced petitioner to fifteen to twenty-five years on Count 5 of the indictment (First Degree Sexual Abuse), a crime punishable by no less than one and no more than five years; third, the state habeas court's order erroneously labeled Count 5 as First Degree Sexual Assault; fourth, the state habeas court improperly labeled Counts 8 and 11 (Incest) as First Degree Sexual Assault; fifth, the state habeas court sentenced him to fifteen to twenty-five years on Counts 8 and 11, which carry a statutory sentence of five to ten years. (Resp't Ex. 9 at 4); sixth, Count 9 (Second Degree Sexual Assault) was changed to one count of First Degree Sexual Assault; seventh, the state habeas court improperly increased his sentence on Count 9 from five to fifteen years to fifteen to twenty-five years.

Also in his Motion for Supplemental Pleadings, petitioner claimed that the sentencing provisions of the state habeas court's final order violated his constitutional right to be present at sentencing (Resp't Ex.9 at 6); that because Count 12 of his indictment was dismissed by the court and formed the factual basis for Counts 13-83, those Counts should also be dismissed (Resp't Ex. 9 at 8); that the habeas court's resolution of Ground 9 was erroneous because the trial court improperly allowed the State to prove by a preponderance of the evidence , as opposed to by clear

and convincing evidence, that petitioner had committed collateral crimes, thereby violating the *ex post facto* clause of the United States Constitution. (Resp't Ex. 9 at 9; Resp't Ex. 8 at 7-8). Petitioner also appended a Notice of Intent to Appeal to his supplemental pleading.

By Order entered September 13, 2006, the state habeas court corrected its previous order by removing language regarding Counts 6, 10 and 81; amending the sentence for Count 5 to one to five years; amending the language of Counts 8 and 11 to charge "Incest" and amending the sentence on Counts 8 and 11 to five to ten years; amending the language of Count 9 to charge Second Degree Sexual Assault and the sentence on Count 9 to five to fifteen years. (Resp't Ex. 10 at 22, and 27). The habeas court summarily denied further relief. (Resp't Ex. 10 at 27).

### 4. Appeal of Denial of Habeas Relief to the West Virginia Supreme Court of Appeals

On February 2, 2007, petitioner, *pro se*, appealed the Circuit Court's denial of portions of his habeas petition to the WVSCA, assigning the following nineteen errors:

1A.     Did the Circuit Court Judge, Jack Alsop, commit PLAIN ERROR or an ABUSE OF DISCRETION, by failing to reverse the Conviction held against the Petitioner, in toto and Order a New Trial be conducted on remaining counts, this after More than One Hundred, compounded Confessed and Adjudicated Constitutional ERRORS have been discovered, resulting in about one third of the Counts convicted on, being dismissed after a trial. This in Violation of W. Va. Constitution Article III § 4, 10, 14, and 17, and the U.S. Constitution Amendment I, V, VI, VII.

1B.[9]   Did the Circuit Judge, Jack Alsop, ERROR when he considered a *Motion for Supplemental Pleading*, ex parte, and failed to provide Notice, Opportunity to Respond, and to provide a Hearing, or to make a Sufficient Record for Appellate Review. This in violation of Due Process of Law, guaranteed by Both State and Federal Constitutions, and W.Va. Code § 53-4A-7(c) 1994.

---

[9] Petitioner numbered his first two claims "1." The first fell under his "Appeal Section A," and the second fell under his "Appeal Section B."

2.    Did the Court's re-sentence Order violate, Mr. Wamsley's Constitutional rights and protections, as provided by the West Virginia State Constitution Amendments 5, and 14, where the re-sentence was conducted without the presence of Mr. Wamsley, or his Court Appointed Counsel.

3.    Did the Court fail to consider what effect the dismissal of Count No. (12), had on the related Counts No. (13) through (83), where upon Count (12) was provided as the principle Count, supplying testimony of one alleged e*vent occurring in* January, (1983), and allegedly repeated once a month up to December (1988), based on the testimony supporting Count (12), where Count No. (12) was the principle count supporting Counts (13) through (83), in a general verdict, when Count No. 12, fell or was dismissed, all related Counts follow with it, as they are now unsupported by the principle, this cause of action being a derivative of Double Jeopardy and Autrefois Convicts, Autrefois Acquits Doctrine.

4.    Did the Court Error in Fact and Law when it denied Mr. Wamsley, relief on Ground No. Eight, of his Petition for a Writ of Habeas Corpus, for reasons "the West Virginia Rules of Evidence, which were effective February 1, 1985, are merely a codification of the common law which were in effect prior to that time", and the Court failed to consider the effects of changes to the Common Law Rules of Evidence, by the New West Virginia Rules of Evidence, which lowered the standard for admission of [collateral Bad Acts Evidence, under the Common Law Rule] now Rule 404(b), type evidence, from CLEAR AND CONVINCING, to the now lesser, PREPONDERANCE, standard under Rule 404(b). This in violation of Ex Post -Facto application of law.

5.    Did the Circuit Court, Jack Alsop, error when he ruled that an automobile accident between two sitting Jurors and two State witnesses was without merit, where the Court failed to consider the liability between parties as an input disqualification of the Juror, who was at fault for the accident. As alleged in Ground (1) of the Habeas Petition.

6.    Did the Circuit Court Judge, Jack Alsop, error in ruling on Ground (3) of the Habeas Petition, when the court failed to consider or apply Stare Decisis principles, in deciding that the twenty year, pre-indictment delay was not "prejudicial delay be the State of West Virginia", were the State stands in the place of the Prosecutrix, in the relation of Sovereign, the State must also stand accountable for prejudicial delays caused by there Prosecutrix, as criminal charges are no longer proceeded in the name of the complainant, but in the name of the Sovereign, which is the State.

7.    Did the Circuit Court Judge, Jack Alsop, error in denying relief on Grounds (4) and (5), of the Habeas Petition, when the Court failed to consider the

Petitioner's rights under the Liberty Interest Clause and Equal Protection Under the Law of both State and Federal Constitutions.

8.     Did the Circuit Court Judge, Jack Alsop, error in deciding Grounds (6) and (7) of the Habeas Petition, where the State failed to give Notice of W. Va. Code § 2-2-8, and failed to employ any procedure to invoke W. Va. § 2-2-8.

9.     Did the Circuit Court, Jack Alsop, error when he failed to address a new question of law, advanced in Grounds (6) and (7), of the Habeas Petition, in that, does the Application of W. Va. Code § 2-2-8, in a criminal proceeding, violate the Prohibition of Ex-Post-Facto Application of Law, when this Statute provides for the revision and or continuation of a repealed or amended Statute, beyond the limiting period of the repeal or amendment.

10.     Did the Circuit Court Judge, Jack Alsop, error in his ruling on Ground (11), where the Court failed to consider the effects of Ex-Post-Facto violations, the failure to give Notice of W.Va. Code § 2-2-8, and failed to consider that terms and definitions as to essential elements, were different under the Law at the time of the alleged offense

11.     Did the Circuit Judge, Jack Alsop, error in deciding Ground (14), of the Habeas Petition, when he failed to address the Question, does Count (8) of the Indictment properly inform the defendant of the charge, where the Indictment alleges two offenses in one Count, I.E., "Sexual Intercourse or intrusion."

12.     Did the Circuit Court Judge, Jack Alsop, error in deciding ground (13), of the Habeas Petition, where there is a new allegation of a Three Term Violation, and where there is no record of a continuance requested by the Petitioner, in Case No. (00-F-23&01-F-12].

13.     Did the Circuit Court Judge, Jack Alsop, error in ruling that Count (8), "is valid based upon sexual intrusion", this after the Court dismissed Count (6) of the Indictment, because there was no evidence to support Sexual intrusion, and both counts resulting, allegedly from the same transaction. This assignment of error related to Ground (14) of the Habeas Petition.

14.     Did the Circuit Court Judge, Jack Alsop, abuse discretion in ruling on Ground (17), of the Habeas Petition, when he failed to properly apply each of the four prong test, as outlined in <u>State v. Sugg</u>, 193 W.Va. 388, to the Prosecutor's improper remarks to the Jury.

15.     Did the Circuit Court, Jack Alsop, error when he applied reasonable doubt to rendering a verdict of NOT GUILTY, the court ruling that his instruction, repeated (83) times, as to the State's burden of proving Guilty was beyond a

Reasonable Doubt, served as a curative, but the Court failed to consider that it also gave the Improper Instruction, applying reasonable doubt to the verdict of NOT GUILTY, (83) times also, this leaving a confusing and prejudicial instruction to the Jury, and a trial with unreliable results. Relates to Ground (15), of the Habeas Petition.

16.     Did the Circuit Court Judge, Jack Alsop, error in his ruling on Ground (20) of the Habeas Petition, when he ruled that the outcome of trial would not have been different based on Counsel's performance, this after more than twenty-five Counts have now been dismissed after the trial.

17.     Did the Circuit Court Judge, Jack Alsop, error in ruling that the "use of force is a question for the Jury," when they had been instructed on Forcible Compulsion. This error related to Ground (18), of the Habeas Corpus Petition.

18.     Did the Circuit Court Judge, Jack Alsop, error and apply the wrong legal standard when ruling on Ground (22) of the Habeas Petition, by failing to consider the prohibition of rehabilitation of prospective Jurors after they have made disqualifying remarks during Voir Dire.

On April 19, 2007, the WVSCA denied petitioner's appeal.  (Resp't Ex. 11).

## B.     FEDERAL HABEAS PETITION PROCEEDINGS

On May 18, 2007, petitioner filed his federal habeas petition pursuant to 28 U.S.C. § 2254.

In his petition, he states his federal habeas claims consist of those claims raised in his habeas

appeal to the WVSCA <u>and</u> his amended state habeas petition (in that order).  Petitioner's federal

habeas claims are therefore as follows:

<u>Grounds 1A, and 1B-18, as alleged in the appeal of his state habeas petition</u>:

1A.     Did the Circuit Court Judge, Jack Alsop, commit PLAIN ERROR or an ABUSE OF DISCRETION, by failing to reverse the Conviction held against the Petitioner, in toto  and Order a New Trial be conducted on remaining counts, this after More than One Hundred, compounded Confessed and Adjudicated Constitutional ERRORS have been discovered, resulting in about one third of the Counts convicted on, being dismissed after a trial. This in Violation of W. Va. Constitution Article III § 4, 10, 14, and 17, and the U.S. Constitution Amendment I, V, VI, VII.

1B.     Did the Circuit Judge, Jack Alsop, ERROR when he considered a *Motion for*

13

*Supplemental Pleading*, ex parte, and failed to provide Notice, Opportunity to Respond, and to provide a Hearing, or to make a Sufficient Record for Appellate Review. This in violation of Due Process of Law, guaranteed by Both State and Federal Constitutions, and W.Va. Code § 53-4A-7(c) 1994.

2.      Did the Court's re-sentence Order violate, Mr. Wamsley's Constitutional rights and protections, as provided by the West Virginia State Constitution Amendments 5, and 14, where the re-sentence was conducted without the presence of Mr. Wamsley, or his Court Appointed Counsel.

3.      Did the Court fail to consider what effect the dismissal of Count No. (12), had on the related Counts No. (13) through (83), where upon Count (12) was provided as the principle Count, supplying testimony of one alleged e*vent occurring in* January, (1983), and allegedly repeated once a month up to December (1988), based on the testimony supporting Count (12), where Count No. (12) was the principle count supporting Counts (13) through (83), in a general verdict, when Count No. 12, fell or was dismissed, all related Counts follow with it, as they are now unsupported by the principle, this cause of action being a derivative of Double Jeopardy and Autrefois Convicts, Autrefois Acquits Doctrine.

4.      Did the Court Error in Fact and Law when it denied Mr. Wamsley, relief on Ground No. Eight, of his Petition for a Writ of Habeas Corpus, for reasons "the West Virginia Rules of Evidence, which were effective February 1, 1985, are merely a codification of the common law which were in effect prior to that time", and the Court failed to consider the effects of changes to the Common Law Rules of Evidence, by the New West Virginia Rules of Evidence, which lowered the standard for admission of [collateral Bad Acts Evidence, under the Common Law Rule] now Rule 404(b), type evidence, from CLEAR AND CONVINCING, to the now lesser, PREPONDERANCE, standard under Rule 404(b). This in violation of Ex Post -Facto application of law.

5.      Did the Circuit Court, Jack Alsop, error when he ruled that an automobile accident between two setting Jurors and two State witnesses was without merit, where the Court failed to consider the liability between parties as an input disqualification of the Juror, who was at fault for the accident. As alleged in Ground (1) of the Habeas Petition.

6.      Did the Circuit Court Judge, Jack Alsop, error in ruling on Ground (3) of the Habeas Petition, when the court failed to consider or apply Stare Decisis principles, in deciding that the twenty year, pre-indictment delay was not "prejudicial delay be the State of West Virginia", were the State stands in the place of the Prosecutrix, in the relation of Sovereign, the State must also stand accountable for prejudicial delays caused by there Prosecutrix, as

criminal charges are no longer proceeded in the name of the complainant, but in the name of the Sovereign, which is the State.

7.    Did the Circuit Court Judge, Jack Alsop, error in denying relief on Grounds (4) and (5), of the Habeas Petition, when the Court failed to consider the Petitioner's rights under the Liberty Interest Clause and Equal Protection Under the Law of both State and Federal Constitutions.

8.    Did the Circuit Court Judge, Jack Alsop, error in deciding Grounds (6) and (7) of the Habeas Petition, where the State failed to give Notice of W. Va. Code § 2-2-8, and failed to employ any procedure to invoke W. Va. § 2-2-8.

9.    Did the Circuit Court, Jack Alsop, error when he failed to address a new question of law, advanced in Grounds (6) and (7), of the Habeas Petition, in that, does the Application of W. Va. Code § 2-2-8, in a criminal proceeding, violate the Prohibition of Ex-Post-Facto Application of Law, when this Statute provides for the revision and or continuation of a repealed or amended Statute, beyond the limiting period of the repeal or amendment.

10.    Did the Circuit Court Judge, Jack Alsop, error in his ruling on Ground (11), where the Court failed to consider the effects of Ex-Post-Facto violations, the failure to give Notice of W.Va. Code § 2-2-8, and failed to consider that terms and definitions as to essential elements, were different under the Law at the time of the alleged offense

11.    Did the Circuit Judge, Jack Alsop, error in deciding Ground (14), of the Habeas Petition, when he failed to address the Question, does Count (8) of the Indictment properly inform the defendant of the charge, where the Indictment alleges two offenses in one Count, I.E., "Sexual Intercourse or intrusion."

12.    Did the Circuit Court Judge, Jack Alsop, error in deciding ground (13), of the Habeas Petition, where there is a new allegation of a Three Term Violation, and where there is no record of a continuance requested by the Petitioner, in Case No. (00-F-23&01-F-12].

13.    Did the Circuit Court Judge, Jack Alsop, error in ruling that Count (8), "is valid based upon sexual intrusion", this after the Court dismissed Count (6) of the Indictment, because there was no evidence to support Sexual intrusion, and both counts resulting, allegedly from the same transaction. This assignment of error related to Ground (14) of the Habeas Petition.

14.    Did the Circuit Court Judge, Jack Alsop, abuse discretion in ruling on Ground (17), of the Habeas Petition, when he failed to properly apply each of the four prong test, as outlined in <u>State v. Sugg</u>, 193 W.Va. 388, to the

Prosecutor's improper remarks to the Jury.

15. Did the Circuit Court, Jack Alsop, error when he applied reasonable doubt to rendering a verdict of NOT GUILTY, the court ruling that his instruction, repeated (83) times, as to the State's burden of proving Guilty was beyond a Reasonable Doubt, served as a curative, but the Court failed to consider that it also gave the Improper Instruction, applying reasonable doubt to the verdict of NOT GUILTY, (83) times also, this leaving a confusing and prejudicial instruction to the Jury, and a trial with unreliable results. Relates to Ground (15), of the Habeas Petition.

16. Did the Circuit Court Judge, Jack Alsop, error in his ruling on Ground (20) of the Habeas Petition, when he ruled that the outcome of trial would not have been different based on Counsel's performance, this after more than twenty-five Counts have now been dismissed after the trial.

17. Did the Circuit Court Judge, Jack Alsop, error in ruling that the "use of force is a question for the Jury," when they had been instructed on Forcible Compulsion. This error related to Ground (18), of the Habeas Corpus Petition.

18. Did the Circuit Court Judge, Jack Alsop, error and apply the wrong legal standard when ruling on Ground (22) of the Habeas Petition, by failing to consider the prohibition of rehabilitation of prospective Jurors after they have made disqualifying remarks during Voir Dire.

Grounds 1-22, as alleged in his state habeas petition:

1. Was the Petitioner, denied a trial by a fair, unbiased, impartial, objective, Jury, qualified and free from exception or *liability*, a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, where there had been a automobile accident involving two empaneled Jury members, who were car pooling to and from trial, and a complaining State Witness and her Family member(s), this accident creating an input disqualification of the two Jury members for reasons of conflicting interest and liability to parties of the Case at hand.

2. The Petitioner was convicted after a trial where the State failed to follow the provisions of Mandatory Joinder Rule 8.(2), of West Virginia State Court Rules of Criminal Procedures, the State having known of two or more offenses meeting the elements for Mandatory Joinder, failed to Join in a single prosecution all offenses known, the second trial on other offenses that should have been Joined in a single Prosecution was a violation of the Double Jeopardy Clauses of the United States and West Virginia Constitutions.

3.     The Petitioner was convicted on an Indictment returned nearly twenty years after the first alleged offense [and] Thirteen years after the last alleged offence was to have occurred, this creating a Prima Facie Prejudice to the Defendant's ability to offer any reliable or effective defense to the more than decade/decades old allegations and leaving a trial with unreliable results, in Violation of West Virginia State Constitution, Article III, § 4, 10 and 14.

4.     The Petitioner's sentence is Unconstitutional, in that the Petitioner will never become parole eligible under the structure of the sentence imposed, being two consecutive sentences of (15) to (25) years in prison, making the effective sentence (30) to (50) years, which is (5) years before he becomes Eligible for Parole, This in violation of State and Federal sentencing guidelines and in Violation of a Liberty Interest as provided in West Virginia Constitution Article III § 10.

5.     The Petitioner's sentence under West Virginia State Code 61-8b-3 (1984) repealed, is Unconstitutional, in that the Petitioner will never become parole eligible under this statute, being that § 61-8b-3, (1984) repealed, had a sentence of (15) to 25) years in prison, the Petitioner will discharge he sentence in (2 ½) year before becoming eligible for Parole, this in Violation of State and Federal Sentencing guide lines and in Violation of a Liberty Interest as provided in West Virginia Constitution Article III § 10.

6.     The petitioner was convicted of numerous counts of the indictment in violation of Ex Post Facto principles when there was no attempt to revive. In violation of West Virginia Constitution Art. III § 4.

7.     The Petitioner was tried and convicted under a repealed statute. In violation of West Virginia Constitution Art. III § 4.

8.     The Petitioner was tried and convicted under present day rules of evidence for alleged crimes that were to have occurred over 15 or 20 years ago. In violation of West Virginia Constitution Art. III § 4.

9.     The Petitioner was convicted after a trial where the state introduced 404(b) evidence against the Defendant, Rule 404(b) was not in existence at the time of the alleged offense and it's application worked to the detriment of the defendant, In violation of West Virginia Constitution Art. III § 4.

10.    The petitioner was sentenced to the current penalty under West Virginia State Code 61-8(b)-3, (1984). Statute 61-8(b)-3, enacted in (1976) had a penalty less than the penalty of Statute 61-8(b)-3 (1984). This in violation of West Virginia Constitution Art. III § 4.

11.    The Petitioner was convicted after a trial, where the Trial Court Judge committed pl[ain] error in giving an improper instruction to the jury, in regards

to West Virginia State Code § 61-8(b)-7, where the indictment failed to instruct properly the essential elements of the offense an improperly instructed the law in place at the time of the alleged offenses, therefore violating West Virginia Constitution Article III, § 4, 10, and 14, and the United States Constitution Article I, § 10.

12.    The Petitioner was convicted of allegedly violating West Virginia State Code § 61-8B-3, where the State charged in an indictment, twenty one violations between (1982) and July (1984), alleging "Sexual Intrusion" in each and every count, the law in place at the time of the alleged offenses required "Sexual Intercourse" (W.Va. Code § 61-8B-3, 1976), Sexual intrusion was not a part of the Statute at the time of the alleged offenses, and did not become part of the Statute until July 1, (1984), this leaving a trial with unreliable results and in violation of the Ex-Post-Facto Clauses of both State and Federal Constitutions.

13.    The Petitioner was denied his Constitutional right to a Speedy Trial in Case No. 01-F-12, this being Indicted on May 23, 2000, as Case No. 00-F-23, and dismissed by Order of the Court entered on May 14, 2001, and re-indicted on May 8, 2001, as Case No. 01-F-12, trial was not held until April, 2002, with no chargeable request for continuance of any term by the Defendant appearing in the record, this leaving the Defendant tried late in the sixth term of Court after being indicted, clearly more than three terms of Court had passed, barring the trial of Case No. 01-F-12, and leaving a Trial in Violation of this States Three Term Rule and in violation of U.S. const. amend., VI and W. Va. Const., art. III. § 14.

14.    The Petitioner was convicted of allegedly violating West Virginia State Code § 61-8-12, where the State charged in an indictment, three violations between (1982) and (1986), alleging "Sexual Intrusion" in each and every count, the law in place at the time of the alleged offenses required "Sexual Intercourse" (W. Va. Code § 61-8-12, 1923), Sexual intrusion was not part of the Statute at the time of the alleged offenses, and did not become part of the Statute until July 1, 1984, this leaving a trial with unreliable results and in violation of the Ex-Post-Facto Clauses of both State and Federal Constitutions.

15.    The Petitioner was convicted on Indictment 01-F-13, after a trial where the court instructed the jury, that in order to find the Defendant innocent of the Counts charged in the indictment, that each member of the jury would have to have a reasonable doubt that the charges in the indictment were not true, this instruction shifting the burden of proof to the Defendant and requiring the jury to find him innocent beyond a reasonable doubt, this violation Both State and Federal Constitutions and make a trial with unreliable results.

16. The Petitioner was convicted in Case No. 01-F-13, after a trial, where the Court failed to provide an in camera hearing in order to determine whether or not evidence offered under W. Va. Rules of Evidence, Rule 404(b), would be admissible at trial, the Court instead electing to adopt and make applicable in Case no 01-F-13, a prior ruling from another Court instead electing to adopt and make applicable in Case no. 01-F-13, a prior ruling from another case that was tried about one year earlier, this violating Due Process of Law, Notice and Opportunity, Access to the Court, Effective Assistance of Counsel, Right to Confrontation, as provided in both State and Federal Constitutions, as well as violating the spirit of the Supreme Court of W.Va.'s rulings in State v. Dolin, 347 S.E.2d 208 (W.Va. (1986).

17. The Petitioner was convicted after a trial where the Prosecuting Attorney stated a personal opinion as to the justness of a cause, the credibility of witnesses, and innocence of the accused, further commented on the defendant as having a duty to call witnesses in support of his defense, this shifting the burden of proof to the Defendant and made comments that dehors the record, in violation of W. Va. Constitution Art. § III, 10 & 14.

18. The Petitioner was convicted of at least three counts of allegedly violating West Virginia State Code § 61-8B-4, this code requires a proving of forcible compulsion, as one of its material elements, this State failed to produced any evidence of forcible compulsion in regard to the counts the Petitioner was convicted, therefore failing to prove a material element of the alleged crime, this leaving a trial with unreliable results and in violation of the W.Va. Constitution.

19. The Petitioner was sentenced in violation of the Ex-Post-Facto clause of both State and Federal Constitutions, in regard to each count of the Indictment alleging a violation of West Virginia State Code § 61-8-12, alleged to have been committed between the years of (1982) and (1989), the Statutory sentence in place under the law at the time was (5) to (10) years in the Penitentiary, the Petitioner being sentenced to a greater punishment of (5) to (15) years, Count (11) however, the Petitioner was sentenced to (15) to (25) years, this sentence being greater than even the penalty under the law today (2005), therefore violating W.Va. Const. Art. III § IV and U.S. Const. Art. I, § 9; Art. 1, § 10.

20. The Petitioner had ineffective assistance of counsel, pre-trial, during trial, post-trial, at sentencing and on appeal. this ineffective assistance of counsel constituting a fundamental unfairness, prejudice, and a trial with unreliable results and failing to meet Constitutional muster under both State and Federal Constitutions, U.S. Constitution Amendment VI, and West Virginia State Constitution Article III § 14.

21.     The Petitioner was denied his Constitutional Right to a speedy trial as provided by U.S. Constitution amendment VI, W.Va. Constitution III, § 14 and W.Va. Code 62-3-21, when the State failed to provide a trial within three regular terms of court after indictment.

22.     The Petitioner was denied his Constitutional right to a Fair, Impartial, Qualified Jury, free from Exception, Bias, and Prejudice, as provided by the Sixth and Fourteenth Amendments of the United States Constitution and West Virginia Constitution article III, § 14, when the Court failed to strike for cause, jurors who revealed Bias Identifiers and Prejudicial views of experiences, or inability to hold to there own Conviction and Opinions in reaching a verdict in a Jury environment, requiring the Defense to correct the Court's error by using the Petitioner's peremptory challenges to remove Jurors who should have been struck for cause, therefore reducing the jury panel to less than twenty as required to meet Constitutional muster.

## II. <u>STANDARD OF REVIEW</u>

### A.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. <u>Walker v. True</u>, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41, 4506 (1957).

### B.     SUMMARY JUDGMENT

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 80 91977). So, too, has the Fourth Circuit Court of Appeals. <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## C.    FEDERAL HABEAS REVIEW UNDER 28 U.S.C. § 2254

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper.  Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). "Federal habeas relief does not lie for errors of state law."  Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999); see, also, Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999).  Furthermore,

"[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).

"Exhaustion" requires a federal habeas petitioner to have presented all federal claims - *in federal terms* - to the highest state court prior to presenting them for federal habeas review.  Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted).  This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Id.  To exhaust a claim in state court, the petitioner must "expressly raise[] that same federal constitutional claim in state court that he raises in federal court."  Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C.  Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

Even if a petitioner is found to have exhausted his state remedies, the federal court may not grant habeas relief for claims adjudicated on their merits by the state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."  Thomas, 170 F.3d at 475.  When a

state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001) (quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal Court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). "In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003), quoting 28 U.S.C. § 2254(e)(1).

Habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

## III. ANALYSIS

**A. TIMELINESS OF PETITIONER'S § 2254 MOTION**

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. §2244(d). The limitation period shall run from the latest of:

A) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review;

B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court, the one year limitation begins to run when the time for filing such a writ - 90 days - expires.

In the present case, petitioner was sentenced on October 28, 2003.[10]  Petitioner's direct appeal to the West Virginia Supreme Court of Appeals was refused May 13, 2004.  Petitioner therefore had until August 13, 2004 to file a writ of certiorari with the United States Supreme Court.  Petitioner did not file a writ, and thus his conviction became final on August 13, 2004.  Normally, the one-year limitations period would have started to run on that date.  However, petitioner's filing of a state habeas petition on May 27, 2004 tolled any running of the one-year limitations period.  See 28 U.S.C. § 2244(d)(2) [providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."]; see also Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  The one-year limitations period began running on April 19, 2007, the day the WVSCA denied petitioner's appeal of his habeas petition.  Petitioner filed his federal habeas petition on May 21, 2007, well within the one-year limitations period.  Petitioner's petition is therefore timely.

**B.      EXHAUSTION OF PETITIONER'S CLAIMS**

As established above, the Court may not grant a petitioner's request for habeas relief unless petitioner exhausted his claims by presenting them to the highest state court.  28 U.S.C. § 2254(b)(1)(A).  Respondent believes petitioner "colorably" exhausted his claims in state court, as

---

[10] Petitioner was originally sentenced on April 18, 2003.  On October 28, 2003, the trial court set aside its original sentencing order and resentenced petitioner to the same sentence in order to allow petitioner to effectuate a timely appeal to the state supreme court.

required by 28 U.S.C. § 2254(b). With the few exceptions noted below, the Court agrees with Respondent and finds petitioner sufficiently alleged his federal claims in state court so as to have exhausted (albeit "colorably" in some instances) his claims.

**C.    PETITIONER'S CLAIMS**

As explained above, petitioner's federal claims consists of those claims alleged in the appeal of his state habeas petition (Grounds 1A, and 1B-18), and his state habeas petition (Grounds 1-22).

**1A.    GROUND ONE (A) - Whether the State Habeas Court Violated Petitioner's Constitutional Rights under Amendments I, V, VI, and VII By Failing to Reverse Petitioner's Conviction and Order a New Trial.**

Petitioner alleges the state habeas court erred by failing to reverse petitioner's conviction and order a new trial after dismissing more than a third of the charges against petitioner because they violated ex post facto principles. Petitioner alleges he was entitled to a new trial because his trial was rendered "fundamentally unfair and unreliable" by the introduction of evidence relating to the 23 dismissed counts. Petitioner alleges the habeas court's error violated his First, Fifth, Sixth, and Seventh Amendment rights. Respondent did not address petitioner's claim.

To the extent petitioner alleges error in his state post-conviction proceedings, the Court is barred from reviewing his claim. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) [holding "[c]laims of error occurring in state post-conviction proceedings cannot serve as a basis for federal habeas corpus relief."].

To the extent petitioner alleges he was prejudiced - and his trial rendered fundamentally unfair - by the introduction of evidence relating to the 23 dismissed counts, the Court is limited to reviewing whether the WVSCA's denial of this claim was contrary to federal law. Pursuant to

well-established Supreme Court law, mere allegations of prejudice are insufficient to establish a due process violation.  <u>United States ex rel. Darcy v. Handy</u>, 351 U.S. 454, 462 (1956).  A demonstration of actual prejudice is required.  <u>Id.</u>  As explained by the Court in <u>Handy</u>, "it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality."  <u>Id.</u>, quoting  <u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269, 281 (1942).   In the present case, petitioner alleges he was prejudiced by the introduction of evidence relating to the dismissed counts; that had the evidence not been introduced, he would not have been convicted on some or all of the remaining counts.  Petitioner's claim amounts to mere speculation and is therefore insufficient to establish prejudice. Additionally, petitioner overlooks the fact that although Counts 1, 3, and 12-30 were dismissed because digital penetration did constitute first degree sexual assault prior to 1984, digital penetration <u>did</u> constitute first degree sexual abuse prior to 1984.  The State, therefore, could have charged petitioner with first degree sexual abuse in place of Counts 1, 13, and 12-30, and admitted the same evidence.  His claim therefore does not warrant relief.

**1B.    <u>GROUND ONE (B) - Whether the State Habeas Court Violated Petitioner's Right to Due Process by Failing to Set a Hearing on Petitioner's Motion for Supplemental Pleadings</u>.**

Petitioner alleges the state habeas court violated his Constitutional Due Process right by failing to set a hearing on his Motion for Supplemental Pleadings.  Respondent argues petitioner's claim impermissibly alleges defects in state post-conviction procedures and is without merit.

To the extent petitioner's claim alleges error in his state habeas proceedings, his claim may not be considered by this Court because such claims are not cognizable in federal habeas review. See <u>Bryant</u>, 848 F.2d at 493.  To the extent petitioner's claim alleges a violation of his

Constitutional Due Process rights, relief is denied because petitioner has failed to establish, and the court finds no authority for the proposition, that petitioner had a constitutionally protected due process right to an evidentiary hearing on the matters raised in his Motion for Supplemental Pleadings. Rather, as set forth in <u>Burch v. McBride</u>, 2006 U.S. Dist. LEXIS 71470, at *17-20 (N.D.W.Va. Sept. 29, 2006), West Virginia does not guarantee a petitioner a full evidentiary hearing in every proceeding instituted in his post-conviction habeas claims. Therefore, there is no evidence the state habeas court violated petitioner's due process rights by failing to set an evidentiary hearing.

   2.     **GROUND TWO - Whether the State Habeas Court Violated Petitioner's Fifth and Fourteenth Amendment Rights by Failing to Provide Petitioner an Opportunity to be Heard.**

   Petitioner alleges his Fifth and Fourteenth Amendment rights were violated when the state habeas court resentenced petitioner without providing him the opportunity to argue for a new trial. Petitioner's habeas petition alleged numerous errors in his conviction and sentence and requested, amongst other forms of relief, a new trial. The state habeas court held an omnibus hearing on petitioner's habeas petition, and issued an order dismissing twenty-three counts and resentencing petitioner. Petitioner alleges the habeas court, upon deciding to dismiss the multiple counts, should have given petitioner the opportunity to argue why a new trial, as opposed to resentencing, was the proper remedy. Respondent contends Petitioner's claim is without merit because Petitioner does not have a constitutionally protected right to a hearing on the Court's Order, and because there is no evidence the state habeas court's Order was contrary to, or an unreasonable application of, federal constitutional law.

The Court agrees with Respondent and finds Petitioner's claim is without merit. First, petitioner <u>was</u> afforded an opportunity - at the omnibus earing held December 2, 2005 - to argue to the habeas court why the errors in his conviction and sentence warranted a new trial. (Resp't Ex. 7 at 25). Second, petitioner has no constitutional right to be present or heard while the Court is formulating its decision. Petitioner has only a constitutional right to be "present at all stages of the trial where his absence might frustrate the fairness of the proceedings." <u>Faretta v. Cal</u>. 422 U.S. 806, 819 n.15 (1975). For these reasons, petitioner's argument is without merit.

3. **GROUND THREE - Whether Petitioner's Right Against Double Jeopardy was Violated by the State Habeas Court's Refusal to Dismiss Counts 31 Through 83.**

Petitioner argues his right against double jeopardy[11] was violated when the state habeas court declined to dismiss Counts 31 through 83[12] after dismissing Count 12. Petitioner alleges the habeas court erred in failing to dismiss Counts 31 through 83 because the evidence underlying Count 12 formed the sole evidentiary basis for Counts 31 through 83. Respondent argues petitioner's claim is without merit because the dismissal of Count 12 through 30 did not require the dismissal of Counts 31 through 83.

Counts 1, 3, 6, 7, and 12-81 of the Indictment charged petitioner with first degree sexual assault via digital "sexual intrusion"[13] on the victim, in violation of West Virginia Code § 61-8B-

---

[11] Petitioner also invokes the common law doctrines of Autrefoid Convicts, or "previously convicted," and Autrefois Acquit, or "previously acquitted."

[12] Petitioner's habeas petition challenges the state habeas court's failure to dismiss counts 13-83. In light of the state habeas court's dismissal of Counts 1, 3, and 12-30, the Court presumes petitioner intends to challenge the state habeas court's failure to dismiss Counts 31-83, not 13 -83.

[13] Sexual intrusion is defined as "any act between persons not married to each other involving penetration, however slight, of the female sex organ or the anus of any

3.  Counts 1, 3, and 12-30 alleged a specific date between 1982 and July 1984.  Counts 82 and 83 charged petitioner with second degree sexual assault, in violation of West Virginia Code § 61-8B-4.

In his state habeas petition, petitioner alleged his conviction on Counts 1, 3, and 12 -30 violated ex post facto principles because prior to July 1, 1984, first degree sexual assault could not be committed by "sexual intrusion;" it could be committed by only "sexual intercourse."[14, 15]  The state habeas court agreed with petitioner and dismissed Counts 1, 3, and 12 - 30 as violating ex post facto principles.  (Resp't Ex. 8 at 10-11).  Petitioner now claims that Counts 31-83 should be dismissed because Count 12, which was dismissed, provided the sole evidentiary support for the Counts.

Petitioner's claim is without merit.  First, petitioner's request for the dismissal of Count 81 is moot, because Count 81 was dismissed at the close of the State's case.  Second, insofar as petitioner's claim alleges his conviction on Counts 31-83 was supported by insufficient evidence, petitioner bears the burden of demonstrating that "after viewing the evidence in the light most

---

person by an object for the purpose of degrading the person so penetrated or for gratifying the sexual desire of either party."  W. Va. Code § 61-8B-1(8)

[14]  Sexual intercourse is defined as "any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person."  W. Va. Code § 61-8B-1(7).

[15]  Prior to July 1, 1984, § 61-8B-3 read, "a) A person is guilty of sexual assault in the first degree when . . . 3) he, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old."  Effective July 1, 1984, the section read, "a) A person is guilty of sexual assault in the first degree when . . . 2) The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is eleven years old or less and is not married to that person."

favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In reviewing the evidence, the Court must defer to the jury's determination of a witness' credibility and presume that the jury resolved any conflicts in the evidence in favor of the prosecution. Wright v. West, 505 U.S. 277, 296 (1992). The Court has reviewed the evidence in the light most favorable to the prosecution and determined petitioner has failed to demonstrate no rational jury could have found him guilty of Counts 31 through 83 (excluding Count 81). To the contrary, there existed testimony from the victim and corroborating testimony from Deputy Knight that petitioner inserted his finger into the victim's vagina - thereby committing "sexual intrusion" - during the period alleged in Counts 31 through 83. (Resp't Ex. 13 at 325-27, 346-48). Relief should therefore be denied.

### 4. GROUND FOUR -Whether Petitioner's Conviction Violates Ex Post Facto Principles.

Petitioner claims the trial court's use of the West Virginia Rules of Evidence violated ex post facto principles because the Rules were not in effect at the time he committed the crimes. Petitioner also alleges the Rules violated ex post facto principles insofar as they lowered the evidentiary standard for the admission of 404(b) evidence. Specifically, petitioner claims that at the time he allegedly committed most of the crimes, the evidentiary standard for the admission of 404(b) acts was "clear and convincing evidence"; that it was not until February 1, 1985 - "well after most counts in the Indictment" - that the West Virginia Rules of Evidence were enacted and changed the standard to "preponderance of evidence." Respondent contends petitioner's claim is without merit because it raises errors concerning state law, which are not cognizable on federal habeas review.

To the extent petitioner's claim challenges the trial court's interpretation of the West Virginia Rules of Evidence, the applicable evidentiary standards for 404(b) evidence, or the West Virginia Constitution's ban on ex-post-facto laws, the Court is barred from reviewing the claim because "[f]ederal habeas relief does not lie for errors of state law." See Thomas, 170 F.3d at 470.

To the extent petitioner alleges the Rules violate ex post facto principles because they were enacted after the majority of his crimes were committed, his claim fails because "every restrospective law is not an ex post facto law." See Calder v. Bull, 3 U.S. (Dall) 386, 390, (1978) [a law is an ex post facto law if it, when applied retroactively to an act, 1) criminalizes a formally innocent act, 2) aggravates the criminal act, 3) increase the punishment for the criminal act, or 4) lowers the proof required to convict the defendant.]

To the extent petitioner asserts the Rules' standard for admitting 404(b) evidence violates ex post facto principles when applied to his crimes committed before February 1, 1985,[16] his claim should be denied. The state habeas court, and the WVSCA, considered, and denied,[17] petitioner's claim, and the Court finds the denial is not contrary to, or an unreasonable application of, federal law. See 28 U.S.C. § 2254(d)(1). As set forth in the fourth prong of Calder's ex post facto test, a

_____

[16] As mentioned above, the West Virginia Rules of Evidence were effected February 1, 1985. The Indictment alleged offense dates of between 1982 and 1989. Because there is no ex post facto violation arising from the application of the Rules of Evidence to crimes committed after February 1, 1985, the Court will only consider the application of the Rules to crimes allegedly committed before February 1, 1985.

[17] The state habeas court denied petitioner's claim largely because it found that West Virginia Code § 2-2-8 ensured petitioner's trial proceedings conformed "as near as practicable" to the law in effect prior to February 1, 1985. (It also, like the present Court, noted that many of petitioner's crimes occurred after the effective date of February 1, 1985.) The Court will not engage in reviewing whether the state court's reliance on § 2-2-8 was proper or reasonable. It will only consider whether the application of the West Virginia Rules of Evidence to crimes committed before the Rules enactment violated ex post facto principles.

law is an ex post facto law if it "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offenders." Calder, 3 U.S. at 390; see also Carmell v. Tex., 529 U.S. 513, 522 (2000). Petitioner urges to Court to find that because the West Virginia Rules of Evidence lowered the standard for the admissibility of 404(b) evidence from "clear and convincing" to "preponderance of evidence," it meets Calder's definition of ex post facto. The Court declines to so find. Assuming the Rules of Evidence did, in fact, lower the evidentiary standard for admitting 404(b) evidence,[18] the change merely altered the rules for the admission of 404(b) evidence, and did not alter the burden of proof required to convict petitioner. See United States v. Mest, 789 F.2d 1069, 1071-72 (4th Cir. 1986). So long as the "crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or degree of proof necessary to establish his guilt, all remain unaffected by the subsequent statute," no ex post violation has occurred. Dobbert v. Florida, 432 U.S. 282 (1977). Petitioner's claim fails.

5. **GROUND FIVE - Whether the Trial Court Violated Petitioner's Right to an Impartial Jury.**

Petitioner alleges he was denied his constitutional right to an impartial jury because the trial court failed to dismiss a juror, Mr. Cogar, after he was involved in a "fender bender" in the courthouse parking lot with a 404(b) witness and her father, Mr. Hart. Petitioner alleges Mr.

---

[18] Respondent, relying on State v. Dolin, 347 S.E.2d 208, 213-14 (W. Va. 1986). contends the common law counterpart to the West Virginia Rules of Evidence merely required the trial court to hold an *in camera* hearing to determine if the evidence was more prejudicial than probative. Petitioner, also relying on Dolin, contends the common law required proof by clear and convincing evidence. Petitioner's contention stems from the statement in Dolin, "[a] collateral crime need not be proven beyond a reasonable doubt, but must be proven by clear and convincing evidence." Id. at 694. The Court need not resolve this dispute because it involves the interpretation of state law.

Cogar should have been dismissed because Mr. Cogar was found to be at fault in the car accident and therefore liable for damages to Mr. Hart. Respondent contends petitioner's claim is without merit because petitioner has failed to demonstrate how the above facts infringed on his right to an impartial jury.

The Court finds petitioner's claim does not warrant relief. First, the trial court judge, after learning of the "fender bender," held a hearing, questioned Mr. Cogar, and concluded Mr. Cogar was free from bias or prejudice. (Resp't Ex. 12 at 244-47). The trial court judge's factual determination is entitled to "special deference," because the trial judge is best able to judge the demeanor and credibility of a juror charged with bias. Patten v. Young, 467 U.S. 1025, 1038 (1984). Second, the WVSCA denied petitioner's claim, and there is no evidence the court's denial was contrary to, or an unreasonable application of, federal law. Pursuant to Smith v. Phillips, 455 U.S. 209, 215 (1982), "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." Rather, due process merely requires the petitioner be given the opportunity in a hearing to prove actual bias. Id. at 216. A hearing was held, and petitioner's counsel questioned Mr. Cogar. (Resp't Ex. 12 at 246). The hearing produced no evidence Mr. Cogar was biased as a result of the accident. Petitioner's claim therefore fails.

**6.     GROUND SIX - Whether Petitioner was Prejudiced by the Twenty-Year Delay Between the Alleged Commission of the Crimes and the Filing of the Indictment.**

Petitioner alleges he was prejudiced by the delay between the alleged commission of the crimes and the filing of the indictment. As reflected by the record, the indictment was returned by the grand jury on May 8, 2001, and alleged offense dates from between 1982 and 1989. There was therefore a nearly twenty-year delay between the first alleged offense and the filing of the indictment, and a nearly twelve-year delay between the last alleged offense and the filing of the

indictment.  Petitioner's claims that had the indictment been filed - and the trial held - closer to the dates of the alleged offenses, the State would have had less 404(b) evidence to admit at trial. Respondent argues petitioner's claim is without merit because petitioner is unable to prove that the State intentionally delayed the indictment to gain an unfair tactical advantage.

The Court agrees with Respondent.  Petitioner's argument, while not explicitly stated as such, alleges a violation of his due process rights stemming from the State's delay in filing the indictment.  In order to succeed on such a claim, petitioner must demonstrate actual prejudice, and that the government intentionally delayed the indictment to gain an advantage; the Court may not simply presume prejudice from the delay.  See Jones v. Angelone, 94 F.3d 900, 906 (4th Cir. 1996).  Petitioner has failed to demonstrate actual prejudice resulting from the delay, nor intentional delay on the part of the government.  Instead, the record establishes the State's delay stemmed from the fact the victim did not disclose the crimes until shortly before the Indictment was returned.  (Pet. Resp. Ex. 3, at Doc. No. 53, Ex. 3).  Additionally, petitioner's assertion the passage of time prejudiced him because it  increased the State's "supply" of 404(b) evidence is mere speculation and is insufficient to establish prejudice.  Therefore, his claim fails.

7. **GROUND SEVEN - Whether Petitioner's Sentence Violated his Constitutional "Liberty Interest."**

Petitioner alleges his sentence violates the Liberty Interest and Equal Protections Clauses of the U.S. Constitution because he will discharge his sentence prior to ever becoming eligible for parole.  Respondent asserts petitioner's claim is without merit because there is no constitutional right to parole.

Petitioner is correct he could discharge his sentence as early as 25 years due to good time credits.[19] Petitioner is also correct he will not be eligible for parole until he serves 30 years of his sentence.[20] Therefore, there is merit to petitioner's claim he may discharge his sentence before ever becoming eligible for parole. Nevertheless, the Court agrees with Respondent and finds petitioner's constitutional claim is without merit. First and foremost, there is no constitutionally protected right to parole. Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Instead, a state may, at its discretion, establish a parole system. Id. at 8. Second, although petitioner would possess certain due process rights upon becoming eligible for parole, see id., petitioner is not yet eligible for parole. Therefore, there is no due process analysis for the Court to presently undertake. Petitioner's claim therefore fails.

8. **GROUND EIGHT - Whether Petitioner's Due Process Right Was Violated.**

Petitioner alleges the trial court deprived him of his constitutional right to due process because it failed to inform him of his right under West Virginia Code § 2-2-8 to be sentenced in accordance with the statutes in effect at the time he committed the crimes. He also alleges the state habeas court erred in deciding Ground 6 and 7 of his state habeas petition. Ground 6 and

---

[19] Pursuant to West Virginia Code § 28-5-57, an inmate may have time deducted from their sentence for good conduct. Specifically, an inmate may receive one day "good time" credit for each day he is incarcerated. The accumulated credits are then deducted from - in the case of an indeterminate sentence - the maximum term. In petitioner's case, petitioner's maximum term for each sentence is 25 years. Therefore, accounting for the maximum number of good-time credits, petitioner's minimum time of incarceration would be 12.5 years for each of his two consecutive sentences, or 25 years total.

[20] Pursuant to West Virginia Code § 62-12-13(a), a prisoner serving consecutive sentences becomes eligible for parole when he has served the minimum terms of both sentences. Petitioner was sentenced to consecutive terms of fifteen to twenty-five years. Therefore, he becomes eligible for parole in 30 years.

Ground 7 of his state habeas petition asserted his conviction violated ex post facto principles because the sexual assault statues were amended in 1984 without an express savings clause, or mention of § 2-2-8.

§ 2-2-8 provides:

"[t]he repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect."

Insofar as petitioner alleges he was prejudiced by not being notified of his rights under § 2-2-8, his claim does not warrant relief. First, habeas relief does not lie for errors of state law. See Thomas, 170 F.3d at 470. Second, any error resulting from his failure to be notified of his right under § 2-2-8 to be sentenced in accordance with the statutes in effect at the time he committed the crimes was corrected by the state habeas court.

Insofar as petitioner alleges his conviction violated ex post facto principles because the statutes were amended without an express savings clause, the state habeas court considered, and denied, petitioner's claim. The Court will not disturb the court's ruling because it is not contrary to, or an unreasonable application of, federal law. Rather, as set forth in United States v. Chambers, 291 U.S. 217, 223 (1934), "the continued prosecution necessarily depend[s] upon the continued life of the statute which the prosecution seeks to apply. In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose." § 2-2-8 acts as that competent authority. See State ex. Rel. Miller v. Bordenkirchere, 272 S.E.2d 676, 677 (W. Va. 1980).

9. **GROUND NINE - Whether the Application of West Virginia Code § 2-2-8 Violates Ex Post Facto Principles**.

Petitioner claims the application of West Virginia Code § 2-2-8 to a repealed statute violates ex post facto principles. Petitioner's claim is without merit because, as established above, § 2-2-8 was enacted by West Virginia to preserve prosecution of offenses committed under a repealed, or amended, statute. See State ex. Rel. Miller, 272 S.E.2d at 677. There is no evidence the application of § 2-2-8 to any of the sexual assault statutes violates ex post facto principles.

10. **GROUND TEN - Whether Count 5 of the Indictment was Sufficiently Charged, and Whether the Trial Court's Instruction on Count 5 Violated Ex Post Facto Principles.**

Petitioner alleges the I) Count 5 of the Indictment was insufficiently charged and ii) the trial court's instruction on Count 5 violated ex post facto principles. Respondent did not directly address petitioner's claim.

i) Whether Count 5 was sufficiently charged in the Indictment.

Count 5 alleged petitioner committed First Degree Sexual Abuse, and tracked the language of § 61-8B-6, the section for first degree sexual abuse. (Resp't Ex. 1). However, Count 5 charged petitioner with violating West Virginia Code § 61-8B-7, the section for Second Degree Sexual Abuse. Petitioner claims this error renders Count 5 defective. The state habeas court considered, and denied, petitioner's claim. The state habeas court found that although Count 5 cited the section for second degree sexual abuse, it sufficiently charged petitioner with first degree sexual abuse because it tracked the language of § 61-8B-6. The Court will not disturb the state habeas court's ruling because it is not contrary to, or an unreasonable application of, federal law. Rather, challenges to the sufficiency of an indictment present a cognizable federal habeas claim only if the indictment is so defective that the convicting court had no jurisdiction, Wood v. Quarterman, 503

F.3d 408, 412 (5th Cir. 2007), or the trial was rendered so "egregiously unfair" as to deprive the defendant of his right to due process. <u>Ashford v. Edwards</u>, 780 F.2d 405, 407 (4th Cir. 1985). There is no evidence Count 5, as worded, met either of these standards. To the contrary, Count 5 tracked the language of the first degree sexual assault statute, thereby providing petitioner with sufficient notice of the charge. <u>See</u> <u>United States v. Matzkin</u>, 14 F.3d 1014, 1018 (4th Cir. 1993) [holding an indictment that tracks the statutory language is normally valid]. Relief should therefore be denied.

ii) <u>Whether the trial court's instruction on Count 5 violated ex post facto principles</u>.

Petitioner alleges the trial court's instruction on Count 5 violated ex post facto principles because it retroactively applied a definition of "sexual contact" that was inapplicable at the time of the offense. Count 5 charged:

> On or about the __ day of __, 1983 in the County of Webster, State of West Virginia, WARREN WAMSLEY committed the felonious offense of "Sexual Abuse in the First Degree by unlawfully and feloniously subjecting [C.M.] to sexual contact by the defendant WARREN WAMSLEY touching the vagina of [C.M.], and [C.M] being eleven years old or less, to-wit: six(6) years old . . . and WARREN WAMSLEY being fourteen (14) years old or more, to-wit thirty-seven (37).

At the time petitioner committed the offense, West Virginia Code § 61-8B-1(6) defined "sexual contact" as:

> "Sexual contact means any touching of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party."

During trial, the trial court instructed the jury on Count 5 using the amended[21] version § 61-8B-1(6), which defined "sexual contact" as:

_____

[21] The statute was amended in 1984.

> "Sexual contact means any intentional touching, either directly or through clothing, of any part of the sex organ of another person, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party."

(Resp't Ex. 15 at 15); <u>see</u> W. Va Code § 61-8B-1 (1984).

The victim, at trial, testified that petitioner touched her only "over top her clothes." (Resp't Ex. 13 at 337). Petitioner argues that in light of the victim's testimony, his touching did not constitute first degree sexual assault as charged in the Indictment (namely, first degree sexual assault by sexual contact); that the trial court's retrospective application of the amended § 61-8B-1(6) to his touching violated ex post facto principles because it criminalized an innocent act. The Court agrees with petitioner, and finds the trial court's application of the amended § 61-8B-1(6) constituted an application of an ex post facto law because it retroactively altered the definition of first degree sexual assault as it was charged in the Indictment, and thereby altered the elements of the offense. <u>See</u> <u>State v. Hensler</u>, 415 S.E.2d 885, 887 (W. Va. 1992); <u>Middleton v. Evatt</u>, No. 94-4015, slip op. at *9-19 (4th Cir. Feb. 14, 1996). Because the application of the amended statute had a "substantial and injurious effect or influence in determining the jury's verdict," habeas relief is warranted. <u>See</u> <u>Brecht</u>, 507 U.S. at 637.

11. **GROUND ELEVEN - Whether Count 8 of the Indictment was Sufficiently Charged.**

Petitioner alleges Count 8 was insufficiently charged in the Indictment because it alleged both "sexual intercourse" and "sexual intrusion." Count 8 charged petitioner with Incest in violation of West Virginia Code § 61-8-12 and read as follows:

> "On or about ___ day of August, 1986 in the County of Webster, State of West Virginia, WARREN WAMSLEY committed the felonious offense of "Incest" by unlawfully and feloniously engaging in sexual intercourse or sexual intrusion with [C.M.], by inserting his penis and/or finger in the vagina of [C.M.] and WARREN WAMSLEY being the maternal uncle of [C.M.], against the peace and dignity of the State of West Virginia."

(Resp' Ex. 1 at 4).  Petitioner claims the mention of both "sexual intrusion" and "sexual intercourse" prevented him from knowing the specific way the State would prove he committed the crime, and made it impossible for him to determine whether the jury found he had committed sexual intrusion or sexual intercourse.  Respondent contends Respondent's argument does not warrant relief because petitioner has failed to demonstrate how the Indictment rendered his trial "egregiously unfair."

The Court agrees with Respondent and finds petitioner's claim does not warrant relief. Challenges to the sufficiency of an indictment do not present a cognizable federal habeas claim unless the indictment is so defective that the convicting court had no jurisdiction, Wood, 503 F.3d at 412, or the trial was rendered so "egregiously unfair" as to deprive the defendant of his right to due process.  Ashford, 780 F.2d at 407.  There is no evidence in the present case the mention of both "sexual intrusion" and "sexual intercourse" in Count 8 voided the court's jurisdiction, because such language merely tracked the language of the statute.[22]  See Matzkin, 14 F.3d at 1018 [holding an indictment that tracks the statutory language is normally valid].  Furthermore, there is no evidence the language of Count 8 rendered petitioner's trial "egregiously unfair," because the indictment provided petitioner with enough information to prepare a defense and protect against double jeopardy.  See Russell v. United States, 369 U.S. 749, 763-4.

There is also no merit to petitioner's allegation that the wording of Count 8 deprived him of a constitutional right to know what theory of Incest- sexual intrusion or sexual intercourse - he was convicted under.  Petitioner does not have a constitutional right to such knowledge.  Rather,

_____

[22] Prior to 1984, Incest could be committed only by engaging in "sexual intercourse."  After § 61-8-12 was amended in 1984, Incest could be committed by engaging in either "sexual intrusion" or "sexual intercourse."

he has merely a right to be convicted by sufficient evidence.  Jackson v. Virginia, 443 U.S. 307, 319-21 (1979).  The court has reviewed the evidence and finds there is sufficient evidence to support petitioner's conviction on Count 8.  See id. at 319 [when reviewing sufficiency of evidence, the reviewing court must view the record in the light most favorable to the prosecution and determine whether "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."].  Specifically, there is evidence petitioner partially inserted his penis into the victim's vagina on the alleged date, (Resp't Ex. 13 at 343), so as to commit sexual intercourse.[23]  Petitioner's claim therefore fails.

**12.     GROUND TWELVE - Whether Petitioner Was Denied his Constitutional Right to a Speedy Trial.**

Petitioner alleges his state and federal right to a speedy trial were violated because his trial was not held within three terms of court.  Petitioner's argument relies on West Virginia Code § 62-3-21, which states that a defendant is entitled to a dismissal if his case is not tried within three terms of court, excluding the term of indictment.[24]  Respondent contends petitioner's claim lacks merit because he has failed to evidence why the state habeas court's factual determinations in this matter are incorrect, and that his constitutional speedy trial rights were violated.

The Court finds petitioner's speedy trial claim does not warrant relief.  Insofar as petitioner alleges a violation of West Virginia's three-term rule, review of that claim is outside the Court's purview because "federal habeas relief does not lie for errors of state law."  Thomas, 170 F.3d at

---

[23] As discussed more thoroughly in GROUND THIRTEEN, no evidence was presented that petitioner inserted his finger into the victim's vagina on the date alleged in Count 8.  Therefore, there is no evidence to support Count 8 insofar as it alleges petitioner engaged in sexual intrusion by inserting his finger into the victim's vagina.

[24] The Court in Webster County convenes in January, May, and September.

470.  Second, insofar as petitioner alleges a violation of his Sixth Amendment speedy trial right,

petitioner's claim has no merit.  As set forth in <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972),

whether a defendant's speedy trial right was violated depends on consideration of four factors: 1)

the length of delay before trial; 2) whether the government or the defendant is responsible for the

delay; 3) whether defendant at any point asserted his right to a speedy trial; 4) whether defendant

was prejudiced by the delay.

A review of the record establishes that petitioner was originally indicted in May 2000.  The

trial was continued to September 2000 upon motion by petitioner.  (Resp't Ex. 19 at 14-17).  For

reasons chargeable to the State, the trial did not occur during either the September 2000 or January

2001 terms.  <u>Id.</u>  In April 2001, the indictment was dismissed.  Petitioner was re-indicted during

the May 2001 term.  Upon petitioner's motion, the trial was continued to the September 2001

term.  (<u>Id.</u>).  For reasons chargeable to the State, Petitioner's trial did not occur during the

September 2001 or January 2002 terms.  Petitioner's trial was set for August 2002.  Due to health

reasons, petitioner failed to appear for trial.  (<u>Id.</u>).  The court, sua sponte, scheduled a competency

evaluation and scheduled the trial for December 2002.  For reasons not chargeable to the State, the

competency evaluation did not take place, and the trial therefore had to be rescheduled.  (<u>Id.</u>).  The

case was finally tried in the January 2003 term.

Based on the facts above, there is no evidence the delay in petitioner's trial violated his

federal constitutional right to a speedy trial, as set forth in <u>Barko</u>-<u>Wingo</u>.  Specifically, it appears

both petitioner and the State were responsible for the delay.  Furthermore, petitioner has failed to

evidence how he was prejudiced by the delay.  As discussed above in GROUND SIX,  petitioner's

assertion the passage of time prejudiced him by increasing the State's "supply" of 404(b) evidence

stems from mere speculation and is insufficient to establish prejudice. Accordingly, petitioner's constitutional claim fails.

13. **GROUND THIRTEEN - Whether the Trial Court Erred by Failing to Dismiss Count 8.**

Petitioner alleges the trial court erred by failing to dismiss Count 8 after it dismissed Count 6. Both Count 6 and 8 stemmed from an incident in August 1986 wherein petitioner was alleged to have attempted to insert his penis into the victim's vagina. Count 6 charged petitioner with First Degree Sexual Assault and alleged that petitioner engaged in sexual intrusion with the victim by inserting his finger into her vagina. (Resp't Ex. 1 at 3). Count 8 charged petitioner with Incest and alleged petitioner engaged in sexual intrusion or sexual intercourse with the victim by inserting his penis and/or finger in the victim's vagina. Count 6 was dismissed at the close of the State's case because the State conceded it had failed to prove petitioner had inserted his finger into the victim's vagina. (Resp't Ex. 13 at 411). Petitioner contends the court should have also dismissed Count 8 for the same reason. Respondent contends petitioner's claim lacks merit because there was sufficient evidence that petitioner partially inserted his penis into the victim's vagina, as alleged in Count 8.

Petitioner's claim does not warrant relief. First, petitioner has failed to raise a cognizable federal claim; he merely alleges state trial error. Second, assuming petitioner intends to allege his conviction on Count 8 is not supported by sufficient evidence, his allegation is without merit. As explained, above, in GROUND ELEVEN, there existed evidence petitioner partially inserted his penis into the victim's vagina on the date alleged in count 8, and thereby committed Incest. (Resp't Ex. 13 at 343). The fact both Count 6 and 8 both alleged petitioner inserted his finger into

the victim's vagina, and the fact Count 6 was dismissed for insufficient evidence, does not mean Count 8 should have been dismissed.

**14.    GROUND FOURTEEN - Whether Petitioner's Due Process Rights were Violated by the Prosecutor's Alleged Misconduct.**

Petitioner alleges the state habeas court erred in reviewing his claim of prosecutorial misconduct.  In his state habeas petition, petitioner alleged the prosecutor made improper remarks concerning her personal opinion on the justness of the cause, the credibility of witnesses, the innocence of the accused, and defendant's duty to call witnesses in his defense.  (Resp't Ex. 6 at 49).  The state habeas court found petitioner's claim lacked merit because the prosecutor's remarks were supported by the evidence presented at trial.  Respondent argues petitioner's claim fails because petitioner has failed to demonstrate that the state habeas court's ruling was contrary to, or an unreasonable application of, federal law.

Insofar as petitioner's claim alleges the prosecutor's remarks violated his constitutional due process right, petitioner did not exhaust his claim in state court.  Instead, his claim in state court relied solely on state law and precedent, and failed to explicitly invoke his federal due process right.  See Anderson, 459 U.S. at 6 (citations omitted) ["It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made."].  As a result, the state habeas court restricted its decision to state law and precedent and was never given the opportunity to evaluate petitioner's federal due process claim.  (Resp't Ex. 10 at 14).  The Court should decline further review of petitioner's claim.

Assuming petitioner had exhausted his claim, the Court finds his claim does not warrant relief.  To succeed on a constitutional claim of prosecutorial misconduct, petitioner must show that the prosecutor's remarks were improper and that they "prejudicially affected [his] substantial

rights so as to deprive the defendant of a fair trial." United States v. Adam, 70 F.3d 776, 780 (4th

Cir. 1995). The Court must consider,

> "1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and
> to prejudice the accused; 2) whether the remarks were isolated or extensive; 3) absent the
> remarks, the strength of competent proof introduced to establish the guilt of the accused,
> and 4) whether the comments were deliberately placed before the jury to divert attention to
> extraneous matters."

Id. at 780, quoting United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983). In light of the

Fourth Circuit precedent, there is no evidence the prosecutor's remarks denied petitioner of a fair

trial. For example, while the prosecutor repeatedly commented on the petitioner's guilt, she did so

within the context of discussing the strength of the evidence. Such comments about petitioner's

guilt are permissible. See United States v. Smith, 441 F.3d 254, 264 (4th Cir. 2006). For these

reasons, petitioner's claim fails.

15. **GROUND FIFTEEN - Whether Petitioner's Right to Due Process was
Violated by the Trial Court's Instructions to the Jury.**

Petitioner alleges his constitutional rights were violated by the trial court's instruction to

the jury that it must, before finding petitioner "innocent," have a reasonable doubt as to the truth

of the State's charges. Respondent argues petitioner's claim is without merit because there is no

evidence the trial court's instructions were improper.

The Court agrees with Respondent and finds that although petitioner alleges a cognizable

federal claim - namely a violation of his constitutional right to verdict of guilt beyond a reasonable

doubt, see Adams v. Aiken, 41 F.3d 175, 177 (4th Cir. 1994) - his claim lacks merit. The trial

court instructed the jury,

> "If the jury, after careful and impartial consideration of all the evidence in the case, has a
> reasonable doubt that a defendant is guilty of the charge, it must acquit. If the jury views
> the evidence in the case as reasonably permitting either of two conclusions - one of

innocence, the other of guilt - the jury should of course adopt the conclusion of innocence."

(Resp't Ex. 15).  Contrary to petitioner's assertion, the trial court never instruct the jury it must find, beyond a reasonable, the charges to be false <u>before</u> they could acquit petitioner. Accordingly, relief should be denied.

**16.      GROUND SIXTEEN - Whether's Petitioner's Counsel was Ineffective.**

Petitioner alleges the state habeas court erred in denying relief on Ground 20 of his amended state habeas petition.  Ground 20 alleged his counsel was ineffective for failing to notice the numerous ex post facto violations inherent in the indictment, and that he was prejudiced by his counsel's failure because the jury was presented with evidence of the faulty counts.  Respondent contends petitioner's claim is without merit because any erroneous failure by counsel to raise the ex post facto violations was corrected by the state habeas court's dismissal of the faulty counts.

The Court find petitioner's claim is without merit.  Pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a claim of ineffective assistance of counsel requires a showing that 1) the counsel's conduct fell below an objective standard of reasonableness, and 2) that petitioner was prejudiced by his counsel's conduct.  In reviewing the reasonableness of counsel's conduct, "judicial scrutiny of counsel's performance must be highly deferential," and must be evaluated "from counsel's perspective at the time."  <u>Id.</u> at 689.  In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.

Regarding <u>Strickland's</u> first prong, petitioner's claim a reasonable attorney would have objected to the ex post violations is arguably meritorious.  However, petitioner has failed to demonstrate he was prejudiced by his counsel's failure to object.  To the contrary, any error was

corrected by the state habeas court later dismissing the faulty counts.  While petitioner argues the jury's verdict would have been different had the evidence of the faulty Counts not been introduced, petitioner's argument stems from speculation, and is insufficient to establish prejudice. See Booth-El v. Nuth, 288 F.3d 571, 584 (4th Cir. 2002).  Additionally, as discussed in GROUND ONE(A), above, the State could have charged petitioner with first degree sexual abuse in place of the dismissed Counts.  Petitioner's claim therefore fails.

### 17.    GROUND SEVENTEEN - Whether Sufficient Evidence Supported Petitioner's Conviction on Counts 9, 82, and 83.

Petitioner alleges the trial court erred by submitting the issue of "forcible compulsion" to the jury in regards to Counts 9, 82, and 83, because no evidence of "forcible compulsion" was introduced.  Counts 9, 82, and 83 charged petitioner with committing Sexual Assault in the Second Degree by inserting his finger in C.M.'s vagina, without her consent, "and with the lack of consent resulting from forcible compulsion."  The trial court instructed the jury that forcible compulsion included "fear by a child under sixteen years of age caused by intimidation, expressed or implied by another person four years older than the victim."  (Resp't Ex. 15 at 143).  Petitioner argues that although the State submitted evidence that petitioner told the victim, after the act, not to tell anyone about the incident, the State failed to submit evidence that petitioner forcibly compelled the victim to submit to the act.  Respondent contends petitioner's claim is without merit because the State introduced sufficient evidence of forcible compulsion.

Assuming petitioner intends to raise a cognizable federal claim of insufficient evidence, petitioner did not raise this federal claim in his state habeas petition.  He cited the same facts, but alleged a violation of the West Virginia Constitution.  This is insufficient to meet the exhaustion requirement.  Anderson, 459 U.S. at 6.

Even were petitioner to have exhausted his claim, relief is not warranted because his claim lacks merit. A petitioner challenging the sufficiency of evidence bears the burden of demonstrating that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319. In reviewing the evidence presented in a case, the Court must defer to the jury's determination of a witness' credibility and presume that the jury resolved any conflicts in the evidence in favor of the prosecution. <u>Wright</u>, 505 U.S. at 296. In the present case, the State presented evidence the victim was under sixteen at the time of the alleged offense; that petitioner was thirty six at the time of the offense; that petitioner inserted his finger into the victim's vagina; and that petitioner told the victim on a prior occasion that she would be in trouble if she told anyone about their interactions. (Resp't Ex. 12 at 335). While petitioner may not have expressly threatened the victim immediately preceding the acts alleged in Counts 9, 82, and 83, a rational jury could have inferred that his prior threat instilled sufficient fear in the victim so as render her submission to the acts in Counts 9, 82, and 83 forcibly compelled. Petitioner's claim therefore fails.

18. **<u>GROUND EIGHTEEN - Whether Petitioner was Denied his Constitutional Right to an Impartial Jury</u>.**

Petitioner alleges he was deprived of his Sixth and Fourteenth Amendment right to an impartial jury because the trial court failed to strike three biased jurors for cause, forcing petitioner to use three of his peremptory challenges to remove the jurors. Respondent contends petitioner's claim is without merit because assuming the jurors were biased against petitioner, they were ultimately removed from the jury panel such that petitioner's constitutional right to an impartial jury was not implicated.

49

Petitioner alleged the present federal claim in his state habeas petition, and the state habeas court denied petitioner's claim. While the state habeas court, in its analysis of petitioner's claim, relied exclusively on state law (with the exception of citing <u>Irvin v. Dowd</u>, 366 U.S. 717 (1961)), the Court finds petitioner adequately presented his claim to the state court so as to have exhausted his claim in state court.

Nevertheless, relief is not warranted because the state habeas court's denial of petitioner's claim was not contrary to, or an unreasonable application of, federal law. In <u>United States v. Martinez-Salazara</u>, 528 U.S. 304, 314-16 (2000), the Supreme Court held that where a trial court refuses to strike a potentially biased juror for cause, and the defendant thereafter exercises a peremptory challenge to remove that juror, the defendant's Sixth Amendment right to an impartial jury has not been implicated so long as he is ultimately convicted (if at all) by an impartial jury. As the Court explained, a defendant does not have a constitutional right to peremptory challenges; only to an impartial jury. <u>Id.</u> Therefore, the fact a defendant chooses to use a peremptory challenge to remove a biased juror, as opposed to keeping the juror and raising the issue on appeal, does not, in itself, give rise to a Sixth Amendment or Due Process claim. <u>Id.</u> Based on the Court's reasoning in <u>Martinez-Salazar</u>, petitioner's Sixth and Fourteenth Amendment claims are without merit.

1. **GROUND ONE - Whether the Trial Court Violated Petitioner's Right to an Impartial Jury.**

As alleged in GROUND FIVE of is state habeas appeal, above, petitioner alleges he was denied his constitutional right to an impartial jury because the trial court failed to dismiss a juror, Mr. Cogar, after he was involved in a "fender bender" with a car containing a 404(b) witness and her father, Mr. Hart. As explained in GROUND FIVE, petitioner's claim does not warrant relief.

2.      **GROUND TWO - Whether the Trial Court Erred by Violating West Virginia's Rule of Mandatory Joinder.**

Petitioner claims the trial court's failure to join the two cases[25] brought against him violated Rule 8 of the West Virginia Rules of Criminal Procedure and the Double Jeopardy Clause of the Constitution. Respondent contends petitioner's claim is without merit because had the two cases been joined into one, petitioner suggests he would have moved to sever them.

To the extent petitioner alleges a violation of Rule 8 of the West Virginia Rules of Criminal Procedure, his claim does not warrant review because "federal habeas relief does not lie for errors of state law." See Thomas, 170 F.3d at 470.

To the extent petitioner alleges a violation of the Double Jeopardy Clause of the Constitution, his claim is without merit. The Double Jeopardy Clause protects a defendant from being tried twice for the same offense. United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir. 1988). A successive prosecution involves the "same offense" when the "evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged." Id. Claimant was charged in, and convicted under, two separate indictments. The first indictment alleged petitioner sexually assaulted victim R.H.. The second indictment - the present indictment - alleged petitioner, on a separate occasion, sexually assaulted victim C.M.. While similar evidence may have been introduced in both cases, the evidence used to prosecute the first case would not have sufficed to convict petitioner in the second case, because the cases involved different victims and different acts. Petitioner's claim therefore fails.

---

[25] Petitioner was charged in a separate indictment with sexually assaulting victim R.H.. He was tried and the jury convicted him of a lesser charge of sexual abuse. (Pet. Appx. B, at 5).

3. **GROUND THREE - Whether Petitioner was Prejudiced by the Twenty-Year Delay Between the Alleged Commission of the Crimes and the Filing of the Indictment.**

As alleged in GROUND SIX of his state habeas appeal, petitioner alleges he was prejudiced by the delay between the alleged commission of the crimes and the filing of the indictment. As explained in GROUND SIX, petitioner's claims does not warrant relief.

4. **GROUND FOUR - Whether Petitioner's Sentence Violated his Constitutional "Liberty Interest."**

As alleged in GROUND SEVEN of his state habeas appeal, petitioner alleges his sentence violates the Liberty Interest and Equal Protections Clauses of the U.S. Constitution because he will discharge his sentence prior to ever becoming eligible for parole. As explained in GROUND SEVEN, petitioner's claims does not warrant relief.

5. **GROUND FIVE - Whether Petitioner's Sentence Violated his Constitutional "Liberty Interest."**

As alleged in GROUND SEVEN of his state habeas appeal, petitioner alleges his sentence violates the Liberty Interest and Equal Protections Clauses of the U.S. Constitution because he will discharge his sentence prior to ever becoming eligible for parole. As explained in GROUND SEVEN, petitioner's claim does not warrant relief.

6. **GROUND SIX - Whether Petitioner's Conviction Violated Ex Post Facto Principles.**

As alleged in GROUND EIGHT of his state habeas appeal, petitioner alleges his conviction violated ex post facto principles because the sexual assault statues were amended in 1984 without an express savings clause, or mention of § 2-2-8. As discussed in GROUND EIGHT, petitioner's claim does not warrant relief.

7.      **GROUND SEVEN - Whether Petitioner's Conviction Violated Ex Post Facto Principles**.

As alleged in GROUND EIGHT of his state habeas appeal, petitioner alleges his conviction violated ex post facto principles because the sexual assault statues were amended in 1984 without an express savings clause, or mention of § 2-2-8. As discussed in GROUND EIGHT, petitioner's claim does not warrant relief.

8.      **GROUND EIGHT - Whether Petitioner's Conviction Violated Ex Post Facto Principles**.

As alleged in GROUND FOUR of his state habeas appeal, petitioner claims the application to his case of the West Virginia Rules of Evidence violated ex post facto principles. As explained in GROUND FOUR, petitioner's claim does not warrant relief.

9.      **GROUND NINE - Whether Petitioner's Conviction Violates Ex Post Facto Principles**.

As alleged in GROUND FOUR of his state habeas appeal, petitioner claims the application to his case of the West Virginia Rules of Evidence violated ex post facto principles because the Rules lowered the admissibility standard for 404(b) evidence. As explained in GROUND FOUR, petitioner's claim does not warrant relief.

9.      **GROUND TEN - Whether Petitioner's Sentence Violates Ex Post Facto Principles.**

Petitioner, in his state habeas petition, alleged his sentence of 15 to 25 years on Counts l, 3, and 12 - 30, charging him with First Degree Sexual Assault, violated ex post facto principles because the statute in effect at the time of the alleged offenses called for a sentence of 10 to 20 years.

The state habeas court agreed with petitioner and indicated petitioner should be resentenced on those Counts. The court later dismissed the Counts due to other ex post facto-related violations. (See Resp't Ex. 10 at 8, 11). Petitioner's present claim is therefore moot.

11. **GROUND ELEVEN - Whether Count 5 Was Sufficiently Charged in the Indictment.**

As alleged in GROUND TEN of his state habeas appeal, petitioner alleges Count 5 was insufficiently charged and that the trial court's instruction on Count 5 violated ex post facto principles. As explained in GROUND TEN, petitioner's claim warrants relief only to the extent it alleges the trial court's instruction violated ex post facto principles.

12. **GROUND TWELVE - Whether Petitioner's Conviction Violated Ex Post Facto Principles**.

Petitioner contends his conviction on Counts 1, 3, and 12 - 30 violated ex post facto principles because the Counts alleged "sexual intrusion," and "sexual intrusion" was not part of the statute in effect at the time the crimes were allegedly committed. The state habeas court agreed with petitioner and dismissed the counts as violating ex post facto principles. Petitioner's claim is therefore moot.

13. **GROUND THIRTEEN - Whether Petitioner Was Denied his Constitutional Right to a Speedy Trial**.

As alleged in GROUND TWELVE of his state habeas appeal, petitioner alleges his state and federal right to a speedy trial were violated because his trial was not held within three terms of court. As explained in GROUND TWELVE, the Court finds petitioner's claim does not warrant relief.

14.     **GROUND FOURTEEN - Whether Petitioner's Conviction on Counts 2, 4, and 8 violated Ex Post Facto Principles.**

Petitioner alleges his conviction on Counts 2 and 4 - alleging Incest - violated ex post facto principles because the Counts alleged "sexual intrusion," and "sexual intrusion" was not part of the statute in effect at the time the crimes were allegedly committed.  Petitioner also alleges Count 8 should be dismissed because it alleges both "sexual intrusion" and "sexual intercourse" and thereby interferes with his ability to prepare a defense.

Regarding Counts 2 and 4, the state habeas court dismissed Counts 2 and 4, agreeing with petitioner that "sexual intrusion" did not constitute Incest at the time the offenses were committed. Therefore, petitioner's claim as it relates to Counts 2 and 4 is moot.  Regarding Count 8, the Court reiterates its analysis and finding from GROUND ELEVEN of petitioner's state habeas appeal, namely that Count 8 was sufficiently charged in the indictment despite alleging both "sexual intrusion" and "sexual intercourse."  Petitioner's claim therefore fails.

15.     **GROUND FIFTEEN - Whether Petitioner's Right to Due Process was Violated by the Trial Court's Instructions to the Jury.**

As alleged in GROUND FIFTEEN of his state habeas appeal, petitioner alleges his constitutional rights were violated by the trial court's instruction to the jury that it must, before finding petitioner "innocent," have a reasonable doubt as to the truth of the State's charges.  As explained in GROUND FIFTEEN, the petitioner's claim does not warrant relief.

16.     **GROUND SIXTEEN - Whether Petitioner's Constitutional Rights were Violated by the Trial Court Admitting 404(b) Evidence in the Absence of a Hearing.**

Petitioner alleges the trial court violated his constitutional right to due process, confrontation, and effective assistance of counsel because it failed to hold an in-camera hearing on the admissibility of the State's 404(b) evidence.  Petitioner <u>also</u> alleges his due process right was

violated by the introduction of 404(b) acts that occurred long after the crimes alleged in the Indictment.  Respondent did not specifically address petitioner's claim.

Regarding petitioner's first claim, petitioner is correct the trial court declined to hold a in-camera hearing on the admissibility of the State's 404(b) evidence.  Instead of holding a hearing, the trial court simply invoked its ruling from petitioner's first case (involving victim R.H.) wherein it found by a preponderance of evidence that the same alleged 404(b) acts did occur. (Resp't Ex. 12 at 185).  Petitioner, in his state habeas petition, challenged the trial court's invocation of its former ruling.  The state habeas court denied petitioner's claim, relying on the fact that the trial court's former ruling complied with West Virginia's evidentiary rules, and that petitioner's counsel, and the 404(b) evidence, were the same in both cases.  The Court finds the state habeas court's denial of petitioner's claim should not be disturbed because it is not contrary to, or an unreasonable application of, federal law.  As the state habeas court pointed out, petitioner was present at the first hearing, his same counsel was present, the same 404(b) acts were alleged, and the State introduced the same 404(b) witnesses and evidence it would have introduced at an in-camera hearing in the present case.  Therefore, there is no evidence petitioner's right to confrontation or due process was violated.  His claim therefore fails.

Regarding petitioner's second claim, it is denied to the extent it challenges the trial court's interpretation of West Virginia's evidentiary code, because "[f]ederal habeas relief does not lie for errors of state law."  See Thomas, 170 F.3d at 470.  It is also denied to the extent petitioner alleges the time span between the crimes and the 404(b) acts violated his right to due process.  Due process challenges to a trial court's admission of evidence will be denied unless the admission "offends some principle of justice so rooted in the traditional and conscience of our people as to be ranked as fundamental."  Patterson, 432 U.S. at 202.  There is no evidence of such offense.

Additionally, as noted by the state habeas court, the jury was free to assign less weight to a 404(b) act due to its occurring so long after the alleged crimes. For these reasons, relief is not warranted.

**17. GROUND SEVENTEEN - Whether Petitioner was Prejudiced by Prosecutorial Misconduct.**

As asserted in GROUND FOURTEEN of his state habeas appeal, petitioner alleges he was prejudiced by prosecutorial misconduct. As explained in GROUND FOURTEEN, petitioner's claim does not warrant relief.

**18. GROUND EIGHTEEN - Whether Sufficient Evidence Supported Petitioner's Conviction on Counts 9, 82, and 83.**

As asserted in GROUND SEVENTEEN of his state habeas appeal, petitioner alleges the trial court erred by submitting the issue of "forcible compulsion" to the jury in regards to Counts 9, 82, and 83, because no evidence of such had been introduced. As the Court found in GROUND SEVENTEEN, above, petitioner's claim does not warrant relief.

**19. GROUND NINETEEN - Whether Petitioner's Sentence Violated Ex Post Facto Principles.**

Petitioner argues his sentence on Counts 2, 4, 8, and 11 violated ex post facto principles because his sentence of 5 to 15 years on Counts 2, 4, and 8, and 15 to 25 years on Count 11, exceeded the 5 to 10 year penalty in effect at the time of the offenses were committed.

The state habeas court agreed with petitioner and held he should be resentenced on Counts 2, 4, 8, and 11. The court later dismissed Counts 2 and 4 for other ex post facto violations, and resentenced petitioner on Counts 8 and 11 to 5 to 10 years. Petitioner's claim is therefore moot.

**20. GROUND TWENTY - Whether Petitioner's Counsel was Ineffective.**

Petitioner alleges his counsel was ineffective because he 1) failed to obtain a psychological evaluation of the victim; 2) failed to provide petitioner a copy of the direct appeal prior to filing it

with the WVSCA; 3) failed to subpoena additional witnesses; 4) failed to investigate the case; 5) failed to discuss trial strategy with petitioner; 6) failed to discuss with petitioner procedural aspects of the case; 7) failed to adequately cross-examine witnesses; 8) failed to review the jury charge; 9) failed to adequately prepare petitioner to testify; 10) failed to appeal petitioner's prior conviction relating to victim H.M.; and 11) failed to adequately explain the penalties or issues of parole.

The state habeas court considered each of petitioner's claims of ineffective assistance of counsel and denied relief. The Court finds the state habeas court's denial of relief is not contrary to, or an unreasonable application, of federal law concerning ineffective assistance of counsel. Pursuant to Strickland v. Washington, 466 U.S. 668 (1984), a claim of ineffective assistance of counsel requires a showing that 1) the counsel's conduct fell below an objective standard of reasonableness, and 2) that petitioner was prejudiced by his counsel's conduct. In reviewing the reasonableness of counsel's conduct, "judicial scrutiny of counsel's performance must be highly deferential," and must be evaluated "from counsel's perspective at the time." Id. at 689. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Petitioner, in each of his claims, fails to demonstrate either that his counsel's conduct was unreasonable, or that he was prejudiced by counsel's particular conduct. (See Resp't Brief, at 49-53). Generally, he fails to establish how a psychological exam of the victim would have benefitted his case; how certain witness' testimony would have benefitted his case; that his attorney failed to meet with him to discuss the case or explain the plea agreement; and how his counsel's cross-examination was deficient. Petitioner's claim, therefore, does not warrant relief.

21.    **GROUND-TWENTY-ONE - Whether Petitioner Was Denied his Constitutional Right to a Speedy Trial.**

As alleged in GROUND TWELVE of his state habeas appeal, petitioner alleges his state and federal right a speedy trial were violated because his trial was not held within three terms of court. As explained in GROUND TWELVE, the Court finds petitioner's claim does not warrant relief.

22.    **GROUND TWENTY-TWO - Whether Petitioner was Denied his Constitutional Right to an Impartial Jury.**

As asserted in GROUND EIGHTEEN of his state habeas appeal, petitioner alleges he was deprived of his Sixth and Fourteenth Amendment right to an impartial jury because the trial court failed to strike three biased jurors for cause, forcing petitioner to use three of his peremptory challenges to remove the jurors. As explained in GROUND EIGHTEEN, petitioner's claim does not warrant relief.

## IV. OTHER MATTERS

**A.    PETITIONER'S REQUEST FOR ORDER**

Petitioner, in his Response to Respondent's Motion for Summary Judgment, requests:

 "that an Order be directed upon the Circuit Court of Webster County, West Virginia, ordering production of all records as identified in the petitioner's designation of record filed in that Circuit Court, as identified on line [92] of the case history sheet maintained in case: 04-P-18."

(Pet. Response, at 7). Petitioner's request is **DENIED** because his request falls outside the scope of the Court's review.

# V.  RECOMMENDATION

For the foregoing reasons, it is hereby RECOMMENDED Respondent's Motion for Summary Judgment (Doc. No. 17) be **GRANTED IN PART** and **DENIED IN PART**, and that petitioner's Petition for Writ of Habeas Corpus (Doc No. 1) be **GRANTED ONLY** as to GROUND 10 (as raised in his state habeas appeal), and discussed as GROUND 10(ii) on pages 39 and 40 of this Recommendation.

Within ten (10) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgement of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and counsel of record, as applicable.


Dated: June 23, 2008


/s/James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE